IN the MATTER OF DISCIPLINARY PROCEED-
INGS AGAINST Thomas G. HINNERS, Attorney at
Law.

Supreme Court

*No. 90-0366-D. Filed June 13, 1991.*

(Also reported in 470 N.W.2d 309.)

PER CURIAM. *Attorney disciplinary proceeding;
attorney's license revoked.*

We review the recommendation of the referee that
the license of Thomas G. Hinners to practice law in
Wisconsin be revoked as discipline for professional mis-

conduct in his dealings with partnerships and other businesses in which he acted as general partner and counsel and in which his clients invested. In those dealings, Attorney Hinners made misrepresentations to clients investing in his partnership, used client funds from the sale of partnership property to make loans to himself and other businesses in which he had an interest, made unauthorized disbursements of partnership funds to one of his partners, made preferential disbursements of partnership funds to others, failed to provide accountings to clients regarding their funds and engaged in a conflict of interest.

We determine that license revocation is appropriate discipline. Attorney Hinners' misrepresentations to clients and use of partnership property and funds were in furtherance of his own financial gain and for the benefit of businesses in which he had an interest. Attorney Hinners thus violated his fundamental duty of honesty to his clients and placed his financial interest over their interests to their detriment.

Attorney Hinners was admitted to practice law in Wisconsin in 1963 and currently resides in Florida. He was suspended from the practice of law in Wisconsin in May, 1988 for failure to comply with continuing legal education requirements.

During the course of this proceeding, Attorney Hinners filed a petition for the voluntary revocation of his license to practice law together with a stipulation of facts. Subsequently, however, he asked to withdraw the petition and requested a hearing on contested facts that were not part of the stipulation. The referee, Attorney Linda S. Balisle, denied his motion, having concluded that there was not a sufficient basis to set aside the stipulation, which contained sufficient facts to warrant revocation of his license. Accordingly, the referee did not

recommend that the court accept the voluntary revocation petition; she recommended that the court revoke Attorney Hinners' license as discipline for misconduct.

On the basis of the stipulation of facts, the referee made the following findings. In 1977, Attorney Hinners and Jerome Schwellinger formed two partnerships to construct and operate apartment complexes in Madison. Attorney Hinners was general partner in and sole legal counsel for each of the partnerships, one of which was a general partnership and the other a limited partnership.

In April, 1977, a couple who had retained Attorney Hinners for estate planning and an incorporation matter agreed to purchase a five percent interest in the limited partnership for $50,000. Another couple who were clients of Attorney Hinners purchased a 25 percent interest in the general partnership for $100,000. Attorney Hinners gave the second couple a nine-page investment report identifying the partnership as a limited partnership, even though the subscription agreement they signed made them general partners. When they made that investment, Attorney Hinners told them there was a second mortgage on the partnership property in the amount of $385,000. In fact, there was no second mortgage; the $385,000 was the amount Attorney Hinners believed was due him and Mr. Schwellinger from the partnership.

In May, 1981, the real estate of both partnerships was sold on land contract but the buyer subsequently defaulted and the partnerships foreclosed. The buyer subsequently redeemed the properties and, at the closing, Attorney Hinners received $1,057,000, of which $510,700 was due the general partnership and $546,800 was due the limited partnership. He deposited those funds into his client trust account and within a month issued two checks from that account to Mr. Schwellinger

totaling $182,800. He then issued trust account checks to the general partnership in the amount of $436,000 and to the limited partnership in the amount of $438,700. He also issued numerous checks from the general partnership bank account totaling more than $200,000 to and for the benefit of other partnerships in which he had an interest and for which he was legal counsel and disbursed funds from the limited partnership account to one of those partnerships which was suffering financial problems. Moreover, he paid himself $100,000 from the general partnership account, a significant portion of which was denominated a loan, although he did not prepare or execute any documents to evidence the "loan" or give any security for the benefit of the partners.

Thus, Attorney Hinners disbursed partnership funds to some but not all of the partners in the general partnership, notwithstanding the partnership agreement's provision that no partner could withdraw funds unless all partners withdrew funds in proportion to their interest. He did likewise with funds of the limited partnership. In November, 1984, two of the partners in the general partnership who had been Attorney Hinners' clients when they invested filed an action to obtain an accounting of partnership funds, later amending their complaint to include allegations of fraud. In September, 1987, they obtained a default judgment against Attorney Hinners in the amount of $229,000.

Five months after the sale of the partnership property Attorney Hinners told some, but not all, of the partners in the limited partnership of the sale. He also told two of the partners, who were former clients, of an investment opportunity in Florida but did not tell them that he had already acquired an interest in that property with funds of the limited partnership.

731

Two months later Attorney Hinners provided the limited partnership investors an accounting, advised them that the proceeds of the sale of partnership property had been reinvested and told them he would pay off any partner by the end of 1984 who elected to terminate his or her partnership interest. Some of the partners requested all funds to which they were entitled but when they did not receive them by the end of 1984 they made repeated demands for payment. Attorney Hinners began making payments to two of them in March of 1985 with funds that came from loan repayments and his own personal funds. Those two then joined others in an action against Attorney Hinners seeking recovery of their funds. Twenty-one months after the closing on the sale of partnership property, most of the partners were still waiting for their funds, totaling $292,600.

In another matter, in February, 1979, Roderick Hubbard and seven others purchased the entire interest in a real estate partnership from Attorney Hinners, Jerome Schwellinger and another for $1,550,000. At the time of the sale, there were two mortgages on the partnership property: the first mortgagee was American Equity Investment Trust; the second mortgagee was Marine National Bank of Neenah. Pursuant to the purchase agreement, the buyers agreed to pay $175,000 at the time of sale and the balance in monthly installments through March, 1987. In addition, they were required to make a $241,787 payment of principal on February 20, 1983. All payments were to be made to Attorney Hinners.

On February 10, 1983, Attorney Hinners' law firm told Mr. Hubbard that the lump sum payment of principal would be applied to the second mortgage. Although he received that payment timely, Attorney Hinners did not apply those funds to the second mortgage; instead,

he used them to make loans to other partnerships in which he had an interest which were experiencing cash flow problems. By letter of April 19, 1983, Attorney Hinners told Mr. Hubbard that the funds had not been applied to the second mortgage but did not tell him that the lump sum payment of principal was used to finance other partnerships experiencing financial problems. He told Mr. Hubbard he would make that mortgage payment in July, as he expected to receive a large payment on another land contract.

When Attorney Hinners did not return numerous telephone calls, Mr. Hubbard wrote to him on August 10, 1983 asking whether the payment of the second mortgage had been made. On September 16, 1983, Attorney Hinners told Mr. Hubbard that the second mortgage matter would be resolved within a month. On March 7, 1985, the second mortgagee wrote Attorney Hinners and Mr. Hubbard that it was considering its option to accelerate the note because of the tardy payment on the mortgage. After Attorney Hinners failed to make payments on the mortgage in October and November of 1985, the mortgagee declared the note due and payable on December 10, 1985, at which time the principal was $298,200.

In reaching conclusions of law, the referee explicitly considered only those facts to which Attorney Hinners had stipulated and did not consider those facts he contested. On the basis of the stipulated facts, then, the referee concluded as follows: Attorney Hinners engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of former SCR 20.04(4)[1] and current SCR 20:8.4(c),[2] by representing to two clients

---

[1]Former SCR 20.04 provides: "**Misconduct.** A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[2]SCR 20:8.4 provides: "**Misconduct.** It is professional mis-

investing in his partnership that there was a second mortgage on partnership property, by using client funds from the sale of partnership property in order to make undocumented and unsecured loans to himself and to other businesses in which he had an interest, by making unauthorized disbursements of partnership funds from his client trust account and preferential disbursements to some but not all partners and by misrepresenting his use of partnership funds in satisfaction of a mortgage on partnership property. The referee also concluded that Attorney Hinners failed to provide an accounting to two clients regarding their funds following the sale of partnership property, in violation of former SCR 20.50(2)(c)[3] and current SCR 20:1.15(b),[4] and that he engaged in a conflict of interest, in violation of former

---

conduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[3]Former SCR 20.50 provides:

**Preserving identity of funds and property of a client.**

. . .

(2) A lawyer shall:

. . .

(c) Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.

[4]SCR 20:1.15 provides:

**Safekeeping property.**

. . .

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

## SCR 20.24(1)[5] and 20.27(1)[6]—current SCR 20:1.7[7] and 20:1.8(a)(1)[8]—by using funds of clients for his personal

[5]Former SCR 20.24 provides:

**Refusing employment when the interests of the lawyer may impair his or her independent professional judgment.**
(1) Except with the consent of the client after full disclosure, a lawyer may not accept employment if the exercise of his or her professional judgment on behalf of the client will be or reasonably may be affected by his or her own financial, business, property or personal interests.

[6]Former SCR 20.27 provides:

**Limiting business relations with a client.**
(1) A lawyer may not enter into a business transaction with a client if they have differing interests in that transaction and if the client expects the lawyer to exercise his or her professional judgment in the transaction for the protection of the client, unless the client has consented after full disclosure.

[7]SCR 20:1.7 provides:

**Conflict of interest: general rule**
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents in writing after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[8]SCR 20:1.8 provides:

**Conflict of interest: prohibited transactions**
(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

and business purposes.

We adopt the referee's findings of fact and conclusions of law and accept the recommendation for discipline. Attorney Hinners' use of funds of clients and former clients who had invested in his partnerships for his own personal purposes and to assist businesses in which he had an interest warrants the most severe sanction.

IT IS ORDERED that the license of Thomas G. Hinners to practice law in Wisconsin is revoked, effective July 15, 1991.

IT IS FURTHER ORDERED that within 60 days of the date of this order Thomas G. Hinners pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

IT IS FURTHER ORDERED that Thomas G. Hinners comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

---

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client.